Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 00 C 8196 | **DATE** | 2/21/2002 |
| **CASE TITLE** | Fred A. Smith vs. Tommy G. Thompson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Report and recommendation recommending that plaintiff's motion for summary judgment [7-1] be denied and defendant's motion for summary judgment [9-1] be granted is hereby entered of record. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 2 2 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docket deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 2/21/2002 date mailed notice | |
| | JS | courtroom deputy's initials | JS mailing deputy initials | |

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **FRED A. SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 00 C 8196 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| **TOMMY G. THOMPSON,** | ) | Magistrate Judge |
| Secretary of Health and Human Services, | ) | Martin C. Ashman |
| | ) | |
| Defendant. | ) | |

DOCKETED
FEB 2 2 2002

## REPORT AND RECOMMENDATION

Fred Smith seeks judicial review of the Secretary's decision to deny Medicare coverage of claims concerning a surgical procedure known as cryosurgical ablation of the prostate. The Administrative Law Judge (the "ALJ") denied the claims because cryosurgery was "not reasonable and necessary" for the treatment of Smith's prostate cancer. Smith maintains that cryosurgery was in fact reasonable and necessary for the treatment of his prostate cancer considering that the procedure was safe and effective, was generally accepted by the medical community, was his only option, and was a complete success. For the following reasons, this Court recommends that Smith's motion be denied.[1]

### I. Procedural Background

Dr. Charles McKiel, Smith's physician, and Rush-Presbyterian-St. Luke's Medical Center, the hospital where Smith's surgery was performed, submitted claims to Health Care Service

---

[1] This matter comes before this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1 for a report and recommendation.



Corporation ("HCSC"), the Medicare Part A and Part B carrier for Illinois, for $18,218.46. Dr. McKiel charged $3500 for his services, and Rush-Presbyterian charged $14,718.46 for its services. (R. at 194, 313.) HCSC denied both claims initially and on reconsideration because it concluded that cryosurgery was not reasonable and necessary for the treatment of Smith's prostate cancer as the procedure was experimental and investigational. (R. at 222-23, 228-29, 288-90, 311-12.) Smith requested review of the Part B decision (which encompassed Dr. McKiel's $3500 claim) by a HCSC hearing officer. On February 26, 1996, the hearing officer issued an on-the-record decision denying the Part B claim. (R. at 269-73.)

Smith elected to have an in-person hearing on April 15, 1996, before a different hearing officer but with respect to the same Part B claim. (R. at 239.) The hearing officer affirmed the previous Part B denial, noting that HCSC had issued a Local Medical Review Policy stating that "Medicare would not approve claims for cryosurgery of the prostate," and noting that Smith was aware of the policy prior to surgery. (R. at 241.) A final on-the-record decision was issued by a hearing officer on November 24, 1997. (R. at 214-19.) The hearing officer denied the Part B claim because cryosurgery of the prostate "has not yet been established as an effective treatment for prostate cancer." (R. at 218.) On May 14, 1996, Smith requested review of the hearing officers' decisions before an administrative law judge. On December 2, 1997, Smith requested review of HCSC's denial of the Part A claim before an administrative law judge, too. (R. at 205, 238.)

The ALJ upheld HCSC's denials of payment under Medicare Part A and Part B on April 10, 1998, because cryosurgery was not reasonable and necessary for the treatment of Smith's prostate cancer as the procedure was experimental and investigational. (R. at 16-17.)

Smith timely appealed the ALJ's decision to the Medicare Appeals Council, which subsequently denied Smith's request for review and adopted the ALJ's decision as the final decision of the Secretary. (R. at 1.) Smith now seeks review of the ALJ's decision pursuant to 42 U.S.C. § 1395ff(b).

## II. Factual Background

On September 14, 1994, Smith learned that he had an elevated Prostate Specific Antigen serum level of 80 mg/ml, indicating that he could have cancer of the prostate. (R. at 310.) Smith's physicians, Drs. Nader Sadoughi and John Saran, ordered a biopsy, which confirmed the diagnosis of carcinoma of the prostate. (R. at 308, 310.) After consultation, Smith elected to have a radical surgical prostatectomy.

On November 3, 1994, Dr. Sadoughi initiated the prostatectomy, but he had to abort the procedure because of the size and location of Smith's tumor. (R. at 298-99.) Dr. Sadoughi informed Smith that he was not a candidate for radiation therapy because his PSA level was above 15 mg/ml. (R. at 58.) Instead, Dr. Sadoughi recommended that Smith consider cryosurgery of the prostate, an experimental and investigational procedure that involved destroying cancerous tissue with extremely cold temperatures. (R. at 58.) Smith accepted Dr. Sadoughi's recommendation, despite being aware of the experimental and investigational nature of the procedure, and despite being aware that Medicare likely would not pay for the procedure. (R. at 296, 314-15, 317, 334.)

On November 22, 1994, Smith signed a document tendered by Dr. McKiel that stated: "I have been notified by Affiliated Urologists that they believe that Medicare is likely to deny

payment for [cryosurgery of the prostate] [because the procedure is not a reasonable and necessary procedure under Medicare law]. If Medicare denies payment, I agree to be personally and fully responsible for payment." (R. at 317.) On March 27, 1995, Smith acknowledged receipt of a document prepared by Rush-Presbyterian that stated: "[Y]our observation stay for [cryosurgery of the prostate] will not be covered by [Medicare] because the planned procedure is considered investigational. . . . If you decide to be admitted to an observation bed at [Rush-Presbyterian] for this procedure, you will be financially responsible for all customary charges for services rendered . . . ." (R. at 314-15.)

Dr. McKiel performed cryosurgery on Smith on March 27, 1995. (R. at 296-97.) The surgery was successful as per subsequent biopsies and other laboratory tests. (R. at 176, 260, 263, 279-80, 282, 293-94.)

### III. The ALJ's Decision

First, the ALJ narrated the applicable rules and regulations. Section 1395y(a)(1)(A) of Title 42 of the United States Code provided that no payment could be made under Part A or Part B for any expenses incurred for items or services that were not reasonable and necessary for the diagnosis or treatment of illness or injury. The Secretary deemed services that were experimental and investigational to be services that were not reasonable and necessary for the diagnosis or treatment of illness or injury. Under 42 U.S.C. § 1395pp, payment could be made for services that were denied under 42 U.S.C. § 1395y(a)(1)(A), if neither the provider nor the beneficiary knew or could have been expected to know that payment would not be made under Medicare. And 42 U.S.C. § 1395ff(b)(3) provided that the Health Care Financing

Administration of the United States Department of Health and Human Services could issue National Coverage Determinations which were binding on administrative law judges. The ALJ quoted a National Coverage Determination issued in 1997 that read:

> Cryosurgery of the prostate gland, a.k.a. cryosurgical ablation of the prostate, destroys prostate tissue by applying extremely cold temperatures in order to reduce the size of the prostate gland. The evidence is not yet sufficient to demonstrate the effectiveness of this procedure. Therefore, cryosurgery of the prostate cannot be considered reasonable and necessary under [42 U.S.C. § 1395y(a)(1)(A)].

(R. at 9.) A rendition of the facts followed.

The next three pages of the ALJ's decision expound on the three HCSC written decisions. The ALJ observed that all of the hearing officers denied the Part B claim because cryosurgery had not yet been established as an effective treatment for prostate cancer (and therefore cryosurgery was not reasonable and necessary for the treatment of prostate cancer). (R. at 9-11.) He noted that the American Urological Association took this position in 1993 and affirmed this position in 1995, and that HCSC issued a Medicare Part B Bulletin in August 1993 to advise the physician community in Illinois that Medicare would not approve claims for cryosurgery of the prostate. (R. at 10.) In addition, the ALJ quoted the following passage from one of the hearing officers' opinions:

> Although [cryosurgery] has proven to be very effective in [Smith's] particular case, [cryosurgery] is simply not recognized as a payable procedure under 1995 Medicare coverage guidelines. I have been advised that [HCSC] plans to continue researching this surgical issue and may decide to cover cryosurgery of the prostate sometime in the future. However, it would not be retroactive to the services provided in 1995.

(R. at 10.)

The ALJ framed the issue before him as whether cryosurgery of the prostate was a covered service on March 27, 1995. (R. at 14.) In making his determination that cryosurgery of the prostate was not a covered service, the ALJ examined the array of evidence presented by Smith—a letter from Dr. Sadoughi indicating Smith's need for cryosurgery; the policies of non-Illinois carriers who paid for cryosurgery of the prostate; the decisions of other administrative law judges; a 1994 letter from a non-Illinois carrier indicating that Accuprobe (the device used to perform cryosurgery, apparently of any kind) was approved by the FDA; a 1996 letter from Dr. McKiel revealing that the American Urological Association had amended its policy on cryosurgery, removing all references to the words experimental and investigational; and a letter from Dr. McKiel stating that Smith was a good candidate for cryosurgery—in conjunction with the rules and regulations stated above.

The ALJ decided that the 1997 National Coverage Determination did not apply because Smith had cryosurgery of the prostate in 1995 and the 1997 National Coverage Determination was not in effect at that time. (R. at 14.) Yet, considering that the Health Care Financing Administration never promulgated a policy on cryosurgery of the prostate prior to 1997, the ALJ treated the 1997 National Coverage Determination as evidence that the procedure was experimental and investigational in 1995. After all, if the Health Care Financing Administration determined that cryosurgery of the prostate was experimental and investigational in 1997, then the procedure must have been experimental and investigational in 1995. (R. at 15-16.) As further evidence of the experimental and investigational nature of cryosurgery of the prostate in 1995, the ALJ referred to HCSC's policy that cryosurgery of the prostate was not covered by Medicare. He also indicated the American Urological Association's 1995 opinion that

cryosurgery of the prostate was experimental and investigational. The ALJ commented that Smith and his physicians were aware of the experimental and investigational nature of cryosurgery of the prostate before the date of Smith's surgery, as evinced by the November 1994 agreement. Therefore, 42 U.S.C. § 1395pp did not apply. (R. at 16.) The ALJ found unpersuasive the decisions made by non-Illinois administrative law judges because those decisions were not precedent and were tied to different facts. Also, the ALJ was not impressed that non-Illinois carriers allowed claims for cryosurgery of the prostate in 1995; the Health Care Financing Administration allowed carriers to determine their own policies on many issues and, according to the ALJ, inconsistent results were common and proper. (R. at 15.) Specifically, the ALJ's findings were as follows:

1. The beneficiary underwent cryosurgery of the prostate on March 27, 1995.

2. The beneficiary received bills for a total of $18,218.46 for the surgery and related services. This included a $3,500.00 charge for the cryosurgery under procedure code 55899, and a charge of $14,718.46 for outpatient hospital services rendered in conjunction with the surgery.

3. National Coverage Determination 35-96, implemented on April 15, 1997, provides that cryosurgery of the prostate is not considered reasonable and necessary under section 1862(a)(1)(A) of the Social Security Act; this became effective April 15, 1997.

4. At the time of the surgery, the carrier's policy was that cryosurgery of the prostate was not covered, as it was investigational.

5. The surgery which the beneficiary received was not medically reasonable and necessary under section 1862(a)(1) of the Social Security Act, despite the positive result.

> 6. The beneficiary, the surgeon, and the hospital each knew that payment for this surgery would not be made because the surgery was regarded as investigational at the time it was done.

(R. at 16-17.)

## IV. Discussion

### A. Standard of Review

Judicial review of the Secretary's decision to deny a Part A or Part B claim encompasses an assessment of the factual basis and legal basis of that decision. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001); *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999). With regard to the ALJ's factual findings, the court's role is limited: if the ALJ's findings are supported by substantial evidence, then the court must affirm the ALJ's decision. *Allen v. Sullivan*, 977 F.2d 385, 389 (7th Cir. 1992). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Put another way, it is more than a mere scintilla of the evidence, but less than the greater weight of the evidence. *Id.*; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). In determining whether substantial evidence exists, the court cannot reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993).

The court reviews the ALJ's application of law without deference and without regard to the volume of evidence that supports the ALJ's findings. *Wood*, 246 F.3d at 1029. If the ALJ's

application of law is not properly grounded, then remand or reversal is warranted. *Cook v. Massanari*, No. 00 C 4157, 2001 WL 755145, at *7 (N.D. Ill. July 2, 2001).

### B. The Reasonableness and Necessity of Cryosurgery of the Prostate

Smith's sole argument on appeal is that the ALJ's decision was arbitrary and capricious.[2] Smith indicates that he presented evidence to the ALJ to overwhelmingly demonstrate that cryosurgery of the prostate was safe and effective, that the medical community generally accepted the procedure as safe and effective, that the procedure was the only option available to Smith, and that the procedure was and continues to be a complete success in Smith's particular case. The argument goes that, to deny the claims in light of this evidence, the ALJ acted arbitrarily and capriciously.

Clearly though such a charge does not square with the ALJ's treatment of this case. The ALJ made not a single legal error. He identified the pertinent rules and regulations. He referred to the 1997 National Coverage Determination, but recognized that he was not bound by it, as it had no retroactive effect. Further, he acknowledged HCSC's Local Medical Review Policy on cryosurgery of the prostate that was in effect during the relevant time period. A policy that he was required to consider, but which he was not required to follow.

HCSC's policy in 1995 that cryosurgery of the prostate was not covered by Medicare Part B because the procedure was experimental and investigational evinces that cryosurgery of the prostate was indeed experimental and investigational on March 27, 1995. (R. at 100.) The American Urological Association's description of cryosurgery of the prostate in 1995 as

---

[2] Smith does not dispute the ALJ's finding with regard to 42 U.S.C. § 1395pp.

"experimental and investigational" also evinces that cryosurgery of the prostate was indeed experimental and investigational on March 27, 1995. Lastly, the 1997 National Coverage Determination that "cryosurgery of the prostate cannot be considered reasonable and necessary under [42 U.S.C. § 1395y(a)(1)(A)]" due to the lack of proof demonstrating the effectiveness of the procedure evinces that cryosurgery of the prostate was indeed experimental and investigational on March 27, 1995. All of this evidence was expressly relied on by the ALJ to make his decision. After reviewing the entire record, we find that this collection of evidence constitutes substantial evidence to support the ALJ's decision.

The evidence that Smith sets forth to attack the ALJ's decision is insufficient for the reasons stated in the hearing officers' decisions, the ALJ's decision, and the Secretary's Motion for Summary Judgment. The reality that cryosurgery of the prostate was safe, effective, and necessary in Smith's particular case, a point that no one has ever contested in this litigation, does not compel the conclusion that the procedure was a reasonable and necessary form of treatment for Smith's prostate cancer on March 27, 1995, under Medicare law. A form of treatment may be necessary and completely successful in a particular case yet still be per se unreasonable and unnecessary under 42 U.S.C. § 1395y(a)(1)(A) if the treatment is properly deemed experimental and investigational as a general rule by someone with the authority to do so. *See Wood*, 246 F.3d at 1032; *Goodman v. Sullivan*, 891 F.2d 449, 451 (2d Cir. 1989).

Significantly, Smith provides no argument or evidence to directly challenge HCSC's 1995 policy that cryosurgery was per se unreasonable and unnecessary to treat prostate cancer. Presumably, the policy embodied the majority view of Illinois health care providers in 1995, based on the strongest evidence possible, including published literature and clinical studies. *(See*

Secretary's Mot. Summ. J. Ex. B at 6-7.)[3] It was Smith's burden to show otherwise. *See Wilkins v. Sullivan*, 889 F.2d 135, 139 (7th Cir. 1989); *Friedman v. Secretary of Health & Human Servs.*, 819 F.2d 42, 45 (2d Cir. 1987). Nor does Smith provide any argument or evidence to directly undermine the basis of the American Urological Association's 1995 opinion that cryosurgery of the prostate was "experimental and investigational," an integral component of the ALJ's decision, conceivably a component of HCSC's 1995 policy.

The ALJ properly evaluated and discounted Smith's evidence of non-Illinois carriers' policies, non-Illinois administrative law judges' decisions, and certain physicians' opinions on the effectiveness and safety of cryosurgery of the prostate. Smith's evidence, coupled with the evidence relied on by the ALJ, reflects a diversity of opinion between 1995 and 1999 on the propriety of cryosurgery of the prostate. Illinois Medicare policy pointed in one direction, while some other states' Medicare policies pointed in the other. The ALJ evaluated Illinois Medicare policy, which was based on generally accepted medical standards in Illinois. Accordingly, positions taken in other states, based on those states' generally accepted medical standards carried little, if any, weight. *See Wood*, 246 F.3d at 1033. Along these same lines, the decisions of other administrative law judges who analyzed non-Illinois Medicare policies also properly received little weight.[4] Finally, we note that some of Smith's evidence is simply too remote in time from March 27, 1995, to have an effect on the outcome of this case. *See Goodman*, 891 F.2d at 451 (involving a plaintiff who underwent a MRI several months prior to when the procedure became

---

[3] *See also Arruejo v. Thompson*, No. CV-00-2402(JG)(SMG), 2001 WL 1563699, at *4 (E.D.N.Y. July 3, 2001) (discussing Local Medical Review Policies).

[4] Regardless of its state of origin, a decision by an administrative law judge does not bind another administrative law judge in a different case. *See* 42 U.S.C. § 405(h).

- 11 -

covered under Medicare). The momentous date in this case is March 27, 1995, when Smith had surgery. The more we stray from that date and the closer we come to present day, the less important Smith's evidence becomes. Advances in technology are made each day.

## V. Conclusion

For the reasons stated, this Court recommends that Smith's motion be denied.

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** February 21, 2002.

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable Joan B. Gottschall within ten (10) days after service of this Report and Recommendation. *See* FED. R. CIV. P. 72(b). Failure to object will constitute a waiver of objections on appeal.

Copies have been mailed to:

STEVEN C. PERLIS, Esq.
Family Center for Elder Law
3345 North Arlington Heights Road
Suite G
Arlington Heights, IL 60004-1591

Attorney for Plaintiff

SAMUEL S. MILLER, Esq.
Assistant United States Attorney
219 South Dearborn Street
Suite 500
Chicago, IL 60604

DONNA MORROS WEINSTEIN, Esq.
Chief Counsel, Region V
JACQUELINE M. ZYDECK, Esq.
Assistant Regional Counsel
Office of the General Counsel
U.S. Department of Health & Human
 Services
233 North Michigan Avenue
Suite 700
Chicago, IL 60601

Attorneys for Defendant